UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CHRIS D. AMES, | ) | Case No. 1:07 CV 1403 |
| | ) | |
| Plaintiff, | ) | Judge Patricia A. Gaughan |
| | ) | REVISED |
| vs. | ) | REPORT AND RECOMMENDATION |
| | ) | OF MAGISTRATE JUDGE |
| COMMISSIONER OF | ) | |
| SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | Magistrate Judge James S. Gallas |
| | ) | |

Chris D. Ames appeals for judicial review of the decision of the Commissioner denying disability insurance benefits under 42 U.S.C. §405(g). Ames suffered an  industrial fall in August 2001, resulting in dislocation of the left shoulder and requiring a full body jacket due to spinal fracture. (TR. 102). In October 2002 Ames underwent his first back surgery - a spinal fusion and bone graft. (Tr. 111). In November 2003 he underwent a second back surgery - removal of significant osteophyte build up in the region of the prior surgery and  fusion with disc removal and implantation of bone. (Tr. 128). A closed reduction had been performed on the left shoulder in August 2001, followed in June 2004 by another reconstruction procedure. (Tr.  102-05, 158-62).

Considering the extent of these injuries, the Commissioner found that Ames was disabled for a closed period of eligibility from August 16, 2001 through January 1, 2005, when the severity of his injuries met Listing §§ 1.02B and 1.04C. (Tr. 20). The Commissioner relied on the opinion of the medical advisor, Dr. Brahms who stated that for a period of time the severity of Ames' impairments met two of the listed impairments of Appendix 1.(Tr. 219)  However, as of January 2, 2005, Dr. Brahms explained that Ames could work because Ames' final surgery for his shoulder,

2

in June 2004, necessitated a period of "rehabilitation" only through January 1, 2005. (Tr. 219). There was also discussion on Ames's use of Oxycontin and Dr. Brahms stated that Ames would not be able to drive or concentrate while so medicated. (Tr. 222). However, based primarily on the testimony from Dr. Brahms, the medical advisor,  the Commissioner found that Ames could perform a partial range of light work commencing January 2, 2005. At the administrative hearing a vocational expert testified that upon consideration of Ames' high school education and status as a younger individual, that Ames could work as a sales attendant, factory general assembler and cashier. The Commissioner concluded, therefore, at the fifth step of the sequential evaluation process that Ames was not disabled. (Tr.24).


***Ames' motion for leave to add to the record his complete fact sheet and statement of errors:***

The undersigned instructed Ames to file a  fact sheet and statement of errors. Ames initially filed an obviously incomplete fact sheet and statement of errors in which he  raised only one argument. The undersigned presumed that the Commissioner's responsive brief, which responded to two arguments, correctly and fully identified two arguments, as raised by Ames.   The Commissioner countered Ames' first argument of failure to follow the agency's own rules in rejecting the opinions from Dr. Choi and Dr. Saghafi, and responded to a second argument of reasonableness of the ALJ's deferral to the vocational expert's opinion. (ECF # 15). The second argument, though, had not actually been raised by Ames in the missing portion of the statement of errors. The undersigned issued a report and recommendation based on Ames' first argument and the Commissioner's representation on Ames' second argument. (ECF #16).

3

After the undersigned filed his report and recommendation, Ames moved for leave to add to the record his complete fact sheet and statement of errors (ECF # 19). Ames states that due to computer error in converting to Adobe Acrobat format his statement of errors was truncated. This motion for leave was referred for recommendation and revised report. (ECF #20).

The motion for leave was heard on September 30, 2008, by the undersigned. The Commissioner stated that the agency had received only the truncated statement of errors, did not realize that the brief was incomplete, and had added a second argument concerning vocational testimony "to flush out the agency's position that substantial evidence supported the ALJ's determination" concerning Ames' residual functional capacity and analysis at the fifth step of the sequential evaluation process. The Commissioner agreed that leave should be granted to file a complete fact sheet and statement of errors.

Ames' counsel should have ascertained whether the complete statement of errors had been filed, and could have responded to the Commissioner's second argument, pointing out that it was not the argument counsel had intended to raise. However, the Commissioner does not claim prejudice will result from amendment, agrees with the motion for leave, and since the Commissioner is responsible for having caused confusion by introducing a second argument which had not been raised by Ames, it is the undersigned's recommendation that the Court should grant Ames' motion for leave to add to the record his complete fact sheet and statement of errors (ECF # 19). Commensurate with this recommendation the undersigned issues the following revised report and recommendation concerning Ames' complete fact sheet and recommendation.

1:07 CV 1636                                        4

## Revised Report and Recommendation

*Standard of Review:*

Ames maintains that the Commissioner's denial of disability insurance should be reversed, or alternately remanded, for proper evaluation, first due to The ALJ's failure to give proper weight to the opinion from treating and examining physicians, and secondly because the ALJ erred in assigning full weight to the opinion of the medical expert. The issues before this court must be resolved under the standard whether there is substantial evidence in the record to support the Commissioner's decision.  Substantial evidence is evidence that a reasonable mind would accept as adequate to support the challenged conclusion.  *Casey v. Secretary of Health & Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993);  *Wyatt v. Secretary*, 974 F.2d 680, 683 (6th Cir. 1992); *Born v. Secretary*, 923 F.2d 1168, 1173 (6th Cir. 1990); and see *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994) (court may "not inquire whether the record could support a decision the other way").

*Sequential Evaluation and Meeting or Equaling the Listing of Impairments:*

The requisite analysis at the final stages of administrative review is known as the five-step sequential evaluation process. This evaluation begins with the question whether the claimant is engaged in substantial gainful activity and then at the second step whether there is a medically severe impairment. See §404.1520(a)(4)(i) and (ii) and §416.920(a)(4)(i) & (ii). At the third step of a disability evaluation sequence the issue is whether the claimant has an impairment which meets or equals a listed impairment from the Listing of Impairments of Appendix 1.  See 20 C.F.R. §404.1520(a)(iii) and (d); §416.920(a)(iii) and (d).  If an impairment exists which meets the

1:07 CV 1403                                    5

description from the listing or is its equivalent, the claimant is deemed disabled at that point without consideration of age, education or prior work experience.  See *Bowen v. Yuckert*, 482 U.S. 137, 141, 107 S.Ct. 2287, 2291, 96 L.Ed.2d 119 (1987); *Sullivan v. Zebley*, 493 U.S. 521, 532, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990) (Once a claimant has met this burden that ". . . his impairment matches or is equivalent to a listed impairment, he is presumed unable to work and is awarded benefits without determination whether he can perform his prior work or other work.")."At the fourth step of the sequential approach described in 20 C.F.R. §404.1520, it is the claimant's burden to show that [he] is unable to perform [his] previous type of work." *Dykes ex rel. Brymer v. Barnhart*, 112 Fed. Appx. 463, 467, 2004 WL 2297874, at *3 (6th Cir. 2004)); *Studaway v. Sec'y of Health and Human Services*, 815 F.2d 1074, 1076 (6th Cir. 1987).Once the administrative decision-maker determines that an individual cannot perform past relevant work, then the burden of going forward shifts to the Commissioner at the fifth step to demonstrate the existence of types of employment compatible with the individual's disability.  *Allen v. Califano*, 613 F.2d 139 (6th Cir. 1980); *Ellis v. Schweiker*, 739 F.2d 245 (6th Cir. 1984); *Cole v. Secretary*, 820 F.2d 768, 771 (6th Cir. 1987); *Abbott v. Sullivan*, 905 F.2d 918, 926 (6th Cir. 1990).  In this case, the Commissioner concluded that Ames was no longer able to perform his past relevant work, so the burden shifted to the Commissioner to establish that Ames was capable of substantial gainful activity that was available in significant numbers. See 20  C.F.R.§404.1572,  416.972;  42  U.S.C.§423(d)(1)(A),§  1328c(a)(3)(A)  (substantial  gainful activity), 42 U.S.C. §423(d)(2)(A), §1328c(a)(3)(B)(significant numbers).

1:07 CV 1403                                     6

*I. Whether the ALJ erred in failing to give proper weight to the opinions from Dr. Choi and Dr. Saghafi:*

Dr. Choi treated Ames for back and shoulder pain since June 2004.  In his physical examination report  dated June 7, 2004, he  noted Ames' weight of 225 pounds, adequate heel/toe walking, fair to good lumbosacral range of motion "even after two surgeries," and "unlimited" straight leg raising on the right side, limited to 80° on the left side. (Tr. 193). The doctor stated only that walking, standing, and sitting for prolonged periods of time aggravates Ames' pain. (*Id.*)

Dr. Choi opined that Ames was permanently disabled in his July 16, 2006 progress note (Tr. 206). His companion remarks were that Ames' gait is steady, he is alert, speech is not slurred and that there is no sedation. Previously, in progress notes dated January 10, February 10, April 13 and May 15, 2006, Dr. Choi either did not mark  "work status" or indicated a status of only no full time work. (Tr. 207- 209). These prior opinions were accompanied by the same comments as repeated in the July 16, 2006 opinion. (Tr. 206- 209). Dr Choi's reported findings were only "positive" gait, standing, and sitting on the left and positive straight leg raising at 90°. (Tr. 208).

Granted, "[t]he uncontradicted opinion from a treating physician is entitled to complete deference.  See *Shelman v. Heckler*, 821 F.2d 316, 320 (6th Cir. 1987); *Jones v. Secretary of Health & Human Serv.*, 964 F.2d 526 (1992).  However, the ALJ must give the opinion from the treating source controlling weight only when he finds the opinion "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record." *Wilson v. Commissioner*, 378 F.3d 541, 544 (6th Cir. 2004) quoting

1:07 CV 1403                                    7

20 C.F.R. §404.1527(d)(2) and §416.927(d)(2). The regulatory scheme under §404.1527(d)(2) (2)
requires that in order for  the treating physician's opinion to be given "more weight," it  must be
"well-supported by medically acceptable clinical and laboratory diagnostic techniques."  This
includes reporting :  (1) treatment provided; (2) extent of examination; and (3) testing (20 C.F.R.
§404.1527(d)(2)(ii). The ALJ *must* apply the regulatory factors of this section when explaining why
the treating source was not accorded controlling weight.  *Bowen v. Commissioner of Soc. Sec.*, 478
F.3d 742, 747 (6th Cir. 2007), citing *Wilson*, 378 F.3d at 544. The ALJ also must consider the
medical opinions "together with the rest of the relevant evidence."  See 20 C.F.R. §§ 404.1527(b).


        Dr. Choi's opinion of permanent disability was rejected by the ALJ for the unsupported
change of opinion from this doctor's earlier reports. (Tr. 22). The ALJ explained that Dr. Choi's
selection of "perm. disabled" under "work status" in July 2006, "is inconsistent with previous forms
and no change in condition is indicated on the form or in other treatment notes. Dr. Choi's treatment
notes contain no opinion or discussion of Mr. Ames' ability to engage in work." (Tr. 22).   In effect
the same medical findings were used to support two opposing conclusions.


         The ALJ may discredit a treating physician's opinion when there has been conflicting
unsupported changes in the opinion on claimant's residual functional capacity. See  *Stanley v.
Department of Health and Human Services*, 39 F.3d 115, 118 (6th Cir. 1994); *Boggle v. Sullivan*,
998 F.2d 342, 348 (6th Cir. 1993).  20 C.F.R. §404.1527(d)(4); §416.927(d)(4). Also the ALJ's
reference to the lack of discussion on ability to work relates to supportability. Supportability takes

1:07 CV 1403                                                    8

into account medical evidence *and explanation*. [1] Accordingly the ALJ gave "good reasons" for discounting Dr. Choi's opinion of disability, fulfilling his regulatory obligation, and this aspect of the determination was supported by substantial evidence.

Ames next contends that the ALJ failed to give proper weight to the residual functional capacity assessment prepared following a consultative examination by a state agency physician, orthopedist Dr Saghafi, who essentially restricted Ames to less that the full range of sedentary work. (Tr.201-02). Dr Saghafi examined Ames at the behest of the state agency in April 2006, and reported essentially normal manual muscle testing, except for left hip flexion and extension and knee flexion, and reported no muscle atrophy (Tr. 197-98).  Range of motion studies were normal except for marked restriction in the lumbar spine (Tr. 198-99). Dr. Saghafi concluded that Ames could lift less that ten pounds, could not sit for six hours during a workday and could stand/walk only 2 hours in a workday (Tr. 201). Further, Dr. Saghafi concluded Ames should avoid vibration (Tr. 204), could perform overhead reaching and had no manipulative restrictions (Tr. 203) and could perform postural movements such as stooping and crawling occasionally (Tr. 202).

The ALJ rejected this opinion for lack of narrative explanation (Tr. 22), and based on Dr. Brahms' testimony found these restrictions were inconsistent with the examination findings and evidence of record, including also the residual functional capacity assessment from a non-examining state agency physician. (Tr. 23, 143-148). While Ames  points out that an examining physician's opinion is "generally" entitled to greater weight than non-examining opinions under the regulations,

---

[1] "The better an explanation a source provides for an opinion, the more weight we will give that opinion." 20 C.F.R. § 404.1527(d)(3).

1:07 CV 1403                                    9

at 20 C.F.R. § 404.1527(d)(1), a physician's status as an examining source is not alone determinative. Dr. Saghafi's opinion as a consultative physician hired by the state agency to examine Ames on one occasion was not entitled to the level of deference accorded to opinions from treating physicians. See *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994).  The ALJ relied on Dr. Brahms' testimony (Tr. 218-23),and the residual functional capacity assessment from non-examining state agency physicians, who concluded that Ames could perform light work as of November 21, 2003 (Tr. 143-48)(Tr. 22-23).  This latter item of evidence is an opinion from a non-examining source, but its consideration is mandated under 20 C.F.R. §404.1527(f)(2)(i), as that from "highly qualified physicians. . . who are also experts in Social Security disability evaluation." Accordingly, the Commissioner maintains that there was substantial evidence to reject the opinion from Dr. Saghafi for lack of supportability and consistency, and further the ALJ provided "good reasons" consistent with 20 C.F.R. §404.1527(d)(2).

Ames astutely argues that the residual functional capacity assessment from the non-examining state agency physician was inconsistent with Dr. Brahms' testimony since this opinion for light work exertion covered the period from onset of disability to November 2003. That argument is not quite correct because the November 2003 residual functional capacity related only to Ames current evaluation status. (See Tr. 144). Nonetheless, this was at a time that Dr. Brahms testified that Ames was disabled.  (Tr. 219). Ames is correct that the November 2003 residual functional capacity assessment was inconsistent with Dr. Brahms' testimony as well as the opinions from Drs. Choi and Saghafi.

1:07 CV 1403                                             10

Obviously, when medical evidence is inconsistent, the reports the ALJ selects will be inconsistent with the other reports, and *vice versa*. So the matter becomes primarily one of administrative discretion. What tempers this discretion is that there must be consistency with the "record as a whole." See 20 C.F.R. §404.1527(d)(4). The ALJ accepted Dr. Brahms' testimony that a recuperation period was necessary on account of the four surgeries which extended disability beyond 2003 to January 2005. There is consistency within the record for this conclusion despite the countervailing opinions from the treating and examining doctors. From the perspective of the "whole" record these opinions favorable to continuing disability, one could say,  fell  by  the wayside. [2]  However, this record is inadequate because it is not "whole." This record is incomplete because the ALJ did not follow the applicable procedure with respect to the report from the consultative examining physician.


*Remand for compliance with 20 C.F.R.§404.1519p(b):*

The arguments concerning "inconsistency,"  are all relatively superficial due to the ALJ's failure to obtain a completed record.  As instructed at the motion hearing, the Commissioner filed a supplemental brief. One of the points addressed "for the sake of completeness" is Ames' "suggestion" that the ALJ should have recontacted Dr. Saghafi, the examining orthopedic consultant, rather that relying on Dr. Brahms, an orthopedist with 50 years experience. The Commissioner argues that Dr. Brahms' testimony was substantial evidence upon which the ALJ reasonably relied and Ames failed to cite to any regulation or case.

---

[2] In note 2 of Ames' statement of errors he supports Dr. Saghafi's opinion with reference to  complaints of disabling pain. Ames, however, does not separately argue that the ALJ erred in rejecting subjective complaints of disabling pain. Ames is content to rest on Dr. Saghafi's opinion.

1:07 CV 1403                                            11

Well, there is a regulation and it reads:

If the report is inadequate or incomplete, we will contact the medical source who performed the consultative examination, give an explanation of our evidentiary needs, and ask that the medical source furnish the missing information or prepare a revised report.

20 C.F.R. § 404.1519p(b).

This provision is mandatory. See *Thompson v. Astrue,* 2008 WL 3849555,*4-*5 (W.D. Va.)(Erroneous weight given  to consultative report "because it was internally inconsistent, based on information that was self-reported, and was formulated after the date last insured."). The ALJ dismissed Dr Saghafi's report for lack of narrative explanation without first giving Dr. Saghafi the opportunity to either clarify the ambiguity between normal motor strengths and the severe restrictions proposed by the doctor, or prepare a revised report (Tr. 22). This is precisely the issue confronted in *Thompson-* an internally inconsistent report which required clarification.


No explanation or a revised report was requested from Dr. Saghafi. Rather than fulfilling his duty to seek explanation for a report which was, in the ALJ's view overly favorable to Ames,  the ALJ sought out another expert opinion, but this time from the non-examining expert, Dr.  Brahms. It appears "expert-shopping" took place, and the ALJ opted to pursue another line of  expert opinion. This was reversible error. See *Thompson*; *Scott v. Shalala,* 898 F.Supp. 1238, 1251 (N.D. Ill. 1995); *Newman v. Apfel,*  2000 WL 682663, *2 (S.D. Ind.).

1:07 CV 1403                                          12

*II. New Argument of whether the ALJ erred in assigning full weight to the opinion from Dr. Brahms:*

      Ames's second argument takes his challenge to the ALJ's rejection of Dr Choi's and Dr. Saghafi's opinions one step deeper in that Dr. Brahms acknowledged the complaints of medication side-effects from Oxycontin that interfered with ability to function but made clear his position that he disagreed with the medication regimen and did not consider Ames' medications or their side-effects in forming his opinion on residual functional capacity. (Tr. 221).  What transpired was that Dr. Brahms testified concerning his opinion for a closed period of benefits (Tr. 219), followed by Ames' counsel's cross-examination on the high dosage of narcotics, to which Dr. Brahms responded that treatment should be curtailed and the prescribed use of Oxycontin was "outrageous" (Tr. 220-21). Dr Brahms then in response answered that, "Obviously Oxycontin is a very strong narcotic . . . And it would certainly be unable for one to drive a car, and to be able to concentrate with any degree of reasonable certainty." (Tr. 222).

      Ames argues medication side-effects should have been included in his residual functional capacity assessment because even Dr. Brahms had conceded that Oxycontin was a very strong narcotic.  Granted, the ALJ did accept Dr. Brahms' residual functional capacity opinion which did not include consideration of Oxycontin's side-effects. The ALJ, though, conducted his own analysis on this issue of medication side-effects, finding "[t]here is no evidence that Mr. Ames' use of prescribed medication is accompanied by side effects that would interfere significantly with his ability to perform work within the restrictions outlined in this decision." (Tr. 23). The ALJ did not base the determination on Dr Brahms' editorializing on the record of Dr. Choi's treatment.

1:07 CV 1403                                    13

The ALJ applied the correct procedure and his conclusion is supported by substantial evidence with respect to this issue. "Drowsiness often accompanies the taking of medication, and it should not be viewed as disabling unless the record references serious functional limitations." *Burns v. Barnhart,* 312 F.3d 113, 131 (3rd Cir. 2002). Therefore, the ALJ must not assume that a claimant is affected by adverse side-effects generally associated with medication, but must examine the record for the degree of side-effects claimant actually experienced. *Grandillo v. Barnhart*, 105 Fed. Appx. 415, 419, 2004 WL 1700977, 99 Soc. Sec. Rep. Serv. 552 (3rd Cir. 2004); *Baker v. Astrue*, 2008 WL 3562080, *7 (E.D. Pa.).


Dr. Brahms' statement that Oxycontin is generally associated with drowsiness, and inability to concentrate or to drive a car, thus, served only to lay a foundation for the ALJ's additional case-specific consideration of medication side-effects.  The ALJ considered Ames' subjective complaints of drowsiness, confusion and decreased concentration, but noted Ames reported that he was able to: care for his two children whose custody he had been awarded ; care for his personal needs; perform household chores; prepare meals; do limited shopping; and continued to drive (Tr. 23). Other factors which could have but were not considered would have been medical record notations of drowsiness, complaints to treating physicians to adjust medication due to side-effects, or observations by examining physicians of decreased concentration or drowsiness. See *Burns, Grandillo, supra*. Such evidence is not found in this record. Ames has produced only his complaints and Dr. Brahms' acknowledgment of Oxycontin's side-effects.  Ames' testimony that he continued to drive, moreover, runs counter to Dr. Brahms' testimony that one could not drive due to Oxycontin's side-effects.  In short, Ames has not verified his complaints with evidence from the record of serious

1:07 CV 1403                                    14

functional limitation due to Oxycontin's side-effects. The ALJ did not err and had substantial

evidence to assign full weight to the testimony of Dr. Brahms despite this doctor's criticism of Dr.

Choi's prescribed treatment. The issue of  medication side-effects was explored by the ALJ using

correct procedure, but this analysis may only be provisional since the issue of Ames' residual

functional capacity has yet to be correctly ascertained.


*CONCLUSION AND RECOMMENDATION*

"Under 42 U.S.C. §405(g), the ALJ's findings are conclusive as long as they are supported

by substantial evidence." *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 851 (6th Cir.

1986) (stating that this court's review "is limited to determining whether there is substantial

evidence in the record to support the findings").  The reviewing court  must defer to an agency's

decision "even if there is substantial evidence in the record that would have supported an opposite

conclusion, so long as substantial evidence supports the conclusion reached by the ALJ." *Key v.

Callahan*, 109 F.3d 270, 273 (6th Cir.1997);  *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001).


The Commissioner's determination was supported by substantial evidence and "good

reasons" with respect to the rejection of Dr. Choi's opinion and supported by substantial

evidence(albeit possibly provisional) concerning the analysis of medication side-effects necessitated

by Dr. Brahms' criticism of Dr. Choi's prescribed course of treatment using Oxycontin.  These small

areas of support from the record, though do not overcome the ALJ's failure to adhere to the

administrative regulation governing consultative medical source reports which prejudiced Ames by

1:07 CV 1403                                    15

depriving him of a substantial right to the ALJ's continuing consideration of evidence fro Dr Saghafi

favorable to a finding of disability. See *Wilson v. Comm'r of Soc. Sec*., 378 F.3d 541, 546-47 (6th

Cir.2004); *Bowen v. Commissioner of Social Sec*.,  478 F.3d 742, 746 (6th Cir. 2007). As a result,

the record is incomplete due to the ALJ's failure to follow the mandate of 20 C.F.R. §404.1519p(b).

The issue of whether the ALJ's decision is supported by substantial evidence cannot be addressed

at this time due to the ALJ's failure to obtain explanation or a revised report from Dr. Saghafi.

Reversal is required, but the Court at this time cannot award benefits due to the inadequate record.[3]


        Based on the arguments presented, the record in this matter and applicable law, the

Commissioner's denial of disability insurance benefits did not follow mandated administrative

procedure, was prejudicial to Ames and deprived him of a substantial right. The Commissioner's

decision denying disability insurance benefits following January 2, 2005, should be denied and

remanded under the fourth sentence of 42 U.S.C.§405(g) for fulfillment of the duty set under 20

C.F.R.§404.1519p(b) and reevaluation consistent with this report.

                                              _____s/James S. Gallas_____
                                              United States Magistrate Judge


---

        [3]  "In cases where there is an adequate record, the Secretary's decision denying benefits can be reversed and
benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong
and evidence to the contrary is lacking. See, e.g., *Lashley v. Secretary of Health and Human Services*, 708 F.2d at
1053-54."

*Mowery v. Heckler*  771 F.2d 966, 973 (6th Cir. 1985).

1:07 CV 1403                               16

     ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within ten (10) days of mailing of this notice.  Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation.  *See, United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).


Dated: October 7, 2008